**In re GOLDEN AGE HOME CARE OF HAMMOND, INC., jointly administered with Golden Age Home Care of South Louisiana, Inc., Golden Age Home Care of Monroe, Inc., Golden Age Home Care of Shreveport, Inc., Golden Age Home Care of Baton Rouge, Inc., Golden Age Home Care of Texas, Inc., Debtors.**

**Bankruptcy Nos. 98–10834 to 98–10839.**

United States Bankruptcy Court,
E.D. Louisiana.

Feb. 1, 2000.

William E. Steffes, Patrick S. Garrity, Steffes & Macmurdo, Baton Rouge, LA for Debtor.

William H. Patrick, Baton Rouge, LA, for trustee.

Robert G. Stassi, Chehardy, Sherman, Metairie, LA for Southern Style Success, Inc.

1. Pl. 252.

2. Pl. 8.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter came on for hearing on October 20, 1999 on the motion of Southern Style Success, Inc. ("Southern Style") for allowance of payment of administrative expenses.[1] The trustee, W. Terrence Brown ("trustee") and HCR Medical Receivable Funding Corporation–1 ("HCR") opposed the motion. The court took the matter under advisement, and the parties have filed supplemental memoranda. For the reasons stated below, the motion is denied.

### I. *Background*

On February 23, 1998, the debtors filed voluntary petitions for relief under Chapter 11. The six different cases were consolidated for joint administration because all were home health care agencies with identical management and ownership, and with many of the same creditors. John M. Herring signed each of the petitions on behalf of the debtors.

The same day the voluntary petitions were filed, the debtors filed an emergency joint motion for authority to enter into an amended and restated healthcare receivables purchase agreement with HCR, and requested an expedited hearing on the motion.[2] At the emergency hearing held on February 26, the court signed an interim order authorizing the debtors to enter into the agreement with HCR, and set a final hearing for March 16, 1998.[3] The court approved the motion for authority at the final hearing, and the order was entered on March 17, 1998.[4]

The order approving the agreement with HCR made it clear that HCR would purchase the receivables only upon the conditions contained in the order and the agreement. The debtors acknowledged that

3. Pl. 17 and 18.

4. Pl. 26.

they could not otherwise obtain sufficient credit necessary to conduct their business. The order includes language giving HCR a superpriority lien, and ordered that any indebtedness arising after the petition date "shall have priority in payment over any other obligations now in existence or incurred hereafter by the Debtors, and over all administrative expenses or charges against property of the kind specified in Bankruptcy Code §§ 503(b), 506(c), 507(a), and 507(b), . . .".[5]

The parent company for each of the debtors is Home Care Center, Inc., which was owned in part by Mr. Herring. During the summer of 1998, Home Care Center, Inc. was sold to Professional Management Providers, Inc., a wholly owned subsidiary of ComTech Consolidation Group, Inc. Mr. Herring, who is also the president of Southern Style, testified that as part of the sale, the debtors entered into leases with Southern Style for five properties that were owned by Southern Style. The leases, dated October 1, 1998, were between Success Southern Style as lessor, and "Golden Age Home Care Center" as lessee.[6] Mr. Herring testified that the debtors occupied the buildings owned by Southern Style for six months, from October 1998 to April 1999, and that the total amount owed on the leases is $158,354. Southern Style seeks an order from the court awarding it administrative expenses in that amount, and ordering the debtors to pay the funds forthwith.

## II. *Analysis*

HCR and the trustee assert several arguments as to why Southern Style is not entitled to an award of administrative expenses. The court need only address the first argument.

HCR contends that the agreement it entered into with the debtors and the court order awarding a superpriority lien in HCR's favor prevent Southern Style from recovering on its claim. The trustee contends that there were considerable administrative claims in this case, but that any available funds must go to HCR, leaving no money left over for Southern Style.

The issue is whether the order giving HCR a superpriority status is valid against Southern Style.

Southern Style argues that it did not receive notice of the order, and that the failure to receive notice is a violation of due process.

■ The court disagrees. Apparently Southern Style did not receive a copy of the motion at the time it was filed on February 23, 1998, and was not noticed with a copy of the order giving HCR a superpriority lien. Southern Style was clearly aware of the motion, however, because Mr. Herring, president of Southern Style was also the vice president of the debtors. In his position as vice president of the debtors, he had signed the bankruptcy petitions on behalf of the debtors. The debtors' emergency joint motion for authority to enter into the agreement with HCR was filed contemporaneously with the debtors' petitions. The court is convinced that Mr. Herring was aware of the motion, the order, and the relief sought. This knowledge is imputable to Southern Style, a corporation of which Mr. Herring was the president.[7]

■ Furthermore, even if Southern Style did not have notice of the order, it is still bound by the order. At least one court has upheld a super-priority claim against parties that did not receive notice.[8]

---

5. Pl. 26 at 4.

6. Ex. M–1 through M–5. There is no legal entity named "Golden Age Home Care Center".

7. *In re Anderson,* 196 B.R. 839 (Bankr. W.D.Mo.1996)("It is a well established princi-

ple that 'The knowledge of a director, officer, sole shareholder or controlling person of a corporation is imputable to that corporation.' ")

8. *In re Mutschler,* 45 B.R. 494 (Bankr.D.N.D. 1984).

The order approving the agreement between HCR and the debtors was docketed in the debtors' bankruptcy case on March 17, 1998. The order is a matter of record, and is available for review by the public. The rents that Southern Style seeks payment of were incurred from October 1988 to April 1999. If Southern Style had reviewed the record, they would have found the order docketed on March 17, 1998. The court finds that subsequent creditors who seek an administrative claim in a Chapter 11 bankruptcy should review the bankruptcy record, and are on constructive notice of orders that are in the record. A review of the record in this case would have revealed the superpriority status granted to HCR from the beginning of the case.

Because Southern Style is bound by the order giving HCR superpriority status, the court need not consider the remaining arguments made by HCR and the trustee.